**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JEFFERY A. DANKERT,**

                **Plaintiff,**

**-vs-**                                       **Case No. 6:07-CV-302-ORL-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

**ORDER**

      This cause came on for consideration without oral argument on the complaint filed

by Jeffery A. Dankert, seeking review of the final decision of the Commissioner of Social

Security (Commissioner) denying his claim for social security benefits.  Doc. No. 1.  The

Commissioner answered the Complaint and filed a certified copy of the record before the

Social Security Administration (SSA).  Doc. No. 7, 9.  Pursuant to the consent of the

parties, this matter has been referred to me for disposition under 28 U.S.C. § 636(c).

Doc. Nos. 10, 11.

**I.     PROCEDURAL  HISTORY.**

      In September 2004, Dankert applied for disability benefits under the Federal Old

Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*., and

under the Supplemental Security Income for the Aged, Blind and Disabled Program

(SSI), 42 U.S.C. § 1381, *et seq*. (sometimes referred to herein as the Act).  R. 62-64.[1]

He alleged that he became disabled on June 1, 2003. R. 62.  Dankert's applications

were denied initially and on reconsideration. R.  37-43.

Dankert requested a hearing before an administrative law judge (ALJ).  R. 35.  An

ALJ held a hearing on August 1, 2006.  Dankert, represented by an attorney, testified at

the hearing.  R. 318-41.

After considering the testimony and the medical evidence presented, the ALJ

determined that Dankert was insured under OASDI through December 31, 2009.  R. 17.

The ALJ found that Dankert had not engaged in substantial gainful activity since June 1,

2003, the alleged onset date of his disability. *Id*.

The ALJ concluded that the medical evidence showed that Dankert had type II

diabetes with neuropathy, hypertension, hyperlipidemia, hypothyroidism, obesity,

asthma, and depression and that he had suffered a stroke, which were severe

impairments.  The ALJ found that Dankert's mental impairments resulted in mild

limitations in activities of daily living, social functioning and concentration, persistence

and pace, with no repeated episodes of decompensation.  These impairments did not

meet or equal any of the impairments listed in the applicable social security regulations

(the Listings).[2]  R. 17.

---

[1]  Dankert's SSI application is not in the record.  *See* Doc. No. 15 at 2 n. 2.

[2]  The Code of Federal Regulations "contains a Listing of Impairments specifying
almost every sort of medical problem ('impairment') from which a person can suffer,
sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d

1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

Case 6:07-cv-00302-KRS   Document 16   Filed 02/13/08   Page 3 of 13 PageID 59

In the body of the decision, the ALJ found that Dankert had the residual functional capacity (RFC) to perform light work.  R. 18.  However, at steps four and five of the sequential analysis, the ALJ found that Dankert had the ability to perform the full range of sedentary work.  R. 20-21.

In reaching this conclusion, the ALJ gave substantial weight to the opinions of two consultative physicians, Drs. Vara and Kaplan.  R. 19.  The ALJ also found that Dankert's testimony about the limitations arising from his impairments was not totally credible. *Id*.

Because Dankert's past relevant work required exertion in excess of his RFC, the ALJ concluded that Dankert could not return to that work.  R. 20.  Relying the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt P, App. 2, the ALJ concluded that Dankert was not disabled.  R. 20-21.

Dankert requested review of the ALJ's decision. R. 6.  On January 22, 2007, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 3-5. Dankert timely sought review of this decision by this Court.  Doc. No. 1.

## II.     JURISDICTION.

Plaintiff having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

---

1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

-3-

### III.    STATEMENT OF FACTS.

The ALJ's decision and the parties' memoranda of law adequately discuss the evidence in the record.  Therefore, I will only summarize the evidence to protect Dankert's privacy to the extent possible.

Dankert was 45 years old as of June 1, 2003.  R. 321.  He had completed school through the ninth grade.  R. 322.  He had previously worked as a cashier. R. 323-24.  He attempted to work after the date he allegedly became disabled, but he testified that he could not stand for the length of time necessary to perform the work.  R. 336-38.

Dankert was injured in a automobile accident in 1986.  He had gradually worsening back pain since that time.  R. 325.  At least as of August 1999, Dankert had been diagnosed with type II diabetes with hypertension, hyperlipidemia and hypothyroidism.  R. 132. In February 2000, he was further diagnosed with moderate to marked depression.  R. 129.  He was also obese.  R. 124.

After the alleged disability onset date, Scott Kaplan, Psy.D., and Robert Jack Eardley, M.D., examined Dankert at the request of the SSA regarding his mental condition. In January 2005, Dr. Kaplan noted that Dankert was not taking his psychotropic medication.  R. 202.  Nevertheless, Dr. Kaplan opined that Dankert did not have limitations in activities of daily living, social functioning or concentration and task persistence.  However, Dr. Kaplan indicated that Dankert should work in a low stress, low demand work environment to avoid decompensation.  R. 203.

In July 2005, Dr. Eardley found, after testing, that Dankert's memory was intact, although his mood and affect suggested depressive factors.  R. 278.  Dr. Eardley opined that Dankert had a depressive disorder not otherwise specified (NOS).  Dr. Eardley concluded as follows:

> As far as this claimant's ability to reason and make occupational adjustments, the claimant indicates his inability to work is due to his physical condition.  He is able to make personal and social adjustments.  He did have the ability to understand, remember, and carry out instructions and was considered cooperative throughout the interview.

R. 279.  In August 2005, Steven L. Wise, Psy. D., opined after review of Dankert's medical records that Dankert would have only mild limitations in activities of daily living, social functioning and concentration, persistence and pace.  He had not had any episodes of decompensation of extended duration.  R. 280-92.

With respect to his physical condition, Dankert had no particular complaints when he was examined by William A. Wahl, M.D., in February 2004.  R. 151.  He reported to Krishna Vara, M.D., in January 2005, that he had had chronic lower back pain since being involved in a motor vehicle accident in 1986.  He stated that the symptoms were progressively getting worse, and that the pain was aggravated by prolonged standing, walking or bending.  R. 207. An x-ray showed mild degenerative joint disease.  R. 209.  Upon examination, Dr. Vara noted that Dankert had full range of motion and full motor strength in all extremities.  His coordination and gait were normal.  R. 208-09.

Dankert sought emergency room treatment in March 2005 based on complaints of weakness on the right side, numbness and tingling.  He was dragging his right foot and his speech was slurred.  R. 169.  Treating physicians determined that Dankert had

suffered a transient ischemic attack, otherwise referred to as a stroke.  R. 170, 237.

In July 2005, Dr. Vara again examined Dankert.  He complained of dizzy spells, lightheadedness, forgetfulness and memory difficulties since his hospitalization in March 2005.  He also reported having tingling and numbness in both legs for two months and chronic low back pain.  R. 204. Dr. Vara did not recommend any physical limitations. R. 206.

Thereafter, Dankert was treated by Thomas L. Garvin, M.D.  Dr. Garvin noted that Dankert's hypertension and symptoms of depression improved with medication.  R. 263, 265-66.[3]  In August 2005, Dankert complained of burning and sharp pains in his feet. R. 253.  Dr. Garvin's assessment was diabetic peripheral neuropathy, for which he prescribed medication.  R. 254.  Dankert again complained of foot pain when he tried to return to work part-time in February 2006.  R. 313.

In February 2006, Dankert sought medical treatment for shortness of breath.  The medical records reflect that Dankert had had a stress test the previous July that was negative.  R. 163.  The assessment was that Dankert had an upper respiratory tract infection with bronchitis and possible asthma exacerbation.  R. 162.  His condition improved with use of a nebulizer.  R. 161, 311.

Medical records reflect that after the alleged disability onset date, Dankert rode a bicycle for exercise.  *See, e.g.,* R. 245, 251, 253.  He told Dr. Eardley in July 2005 that he was able to go to stores and to the post office by himself.  He could prepare food, and he cleaned up around the house.  He was able to care for his personal hygiene.  He

---

[3] He was tearful in January 2006 about the death of his mother the previous November.  R. 315.

watched television on and off for ten to twelve hours a day.  He also talked on the

telephone with friends, and took care of his eighty-four year old mother. R. 277.

At the hearing, Dankert estimated that he could sit for fifteen or twenty minutes

before needing to stand up and move around.  R. 327.  He could climb stairs one at a

time.  R. 327.  He could walk around a block.  R. 334.  He could stand for about an hour.

R. 327-28.  He could squat while holding onto something for stability, but he could not

bend.  R. 328.  In a typical day, he helped cook, wash dishes and vacuum for a couple

minutes at a time.  He could dress himself, make his own bed and do the laundry.

R. 334.

Dankert testified that he had difficulty remembering things.  R. 329-32.  He  was

diabetic, and stress caused his blood sugar to be uncontrolled.  R. 330.  This resulted in

mood swings.  R. 331.  He had difficulty sleeping due to diabetes and lower back pain.

R. 333.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be

unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which has lasted or can be expected to last

for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A); 42

U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is

one "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42

U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In a case seeking disability benefits

under OASDI, the claimant also must show that he or she became disabled before his or

her insured status expired in order to be entitled to disability benefits.  42 U.S.C.

§ 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that

must be followed in determining whether a claimant is entitled to benefits.  In sum, an

ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?

> (2) Is the claimant's impairment severe?

> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

> (4) Is the claimant unable to perform his or her former occupation?

> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above

questions leads to either the next question, or, on steps three and five, to a finding of

disability.  A negative answer leads to a finding of "not disabled."  *See, e.g., McDaniel v.

Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore

entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274,

1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden

temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence

that there is other work available in significant numbers in the national economy that the

claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d

1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision.  *Dyer*, 395 F.3d at 1210.  The court may not reweigh the evidence or substitute its own judgment.  *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law.  *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## V.    ANALYSIS.

Dankert asserts that the ALJ erred by finding his testimony about his subjective symptoms to be not totally credible and by relying exclusively on the Grids at step five of the sequential analysis.  These are the only issues I will address.[4]

With respect to credibility, Dankert argues that the ALJ failed to follow this circuit's pain standard and social security ruling 96-7, both of which require the same analysis. To evaluate allegations of pain and other subjective symptoms under this standard, there must be "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."  *Id.* at 1561-62.

In the present case, the ALJ expressly acknowledged and applied the pain standard.  R. 19-20.  As noted above, he found underlying medical conditions that could reasonably be expected to give rise to Dankert's pain and other subjective symptoms. He credited some of Dankert's subjective complaints, resulting in the limitations noted in

---

[4] The parties were advised that issues not specifically raised would be waived. Doc. No. 8 at 2.

the RFC.  *See also* R. 20 (ALJ rejected reviewing physicians' RFC assessments that Dankert could perform work at a medium level of exertion, finding that "the claimant has severe impairments that more significantly limit work activity.").  However, after a review of the evidence of record, the ALJ found that Dankert's testimony about the limitations arising from these symptoms was not totally credible.

The ALJ relied on Dr. Vara's findings that Dankert had full range of motion and motor strength with no significant objective findings of back pain.  Dankert's reported activities of daily living included the ability to exercise, and to watch television many hours during the day.  The ALJ noted that a stress test in July 2005 was negative.  Furthermore, the medical records reflect only sporadic reports of pain and symptoms from depression.  Both Dr. Kaplan and Dr. Eardley opined that depression would cause only mild limitations in Dankert's ability to function.  All of these findings are supported by substantial evidence in the record.  Therefore, the ALJ did not err in assessing Dankert's credibility.

Dankert also contends that the ALJ erred by relying exclusively on the Grids at step five of the sequential evaluation.  In this circuit, an ALJ must initially determine whether the claimant's alleged nonexertional impairments limit the ability to work; if they do not, then exclusive reliance on the Grids at step five of the evaluation process is appropriate. *See Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984)(citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 537 (6th Cir. 1981); *see also Broz v. Schweiker*, 677 F.2d 1351, 1363 (11th Cir. 1982)(remanding for consideration whether a claimant's nonexertional impairments significantly limited his basic work skills, and then, whether the Grids could be used), *vacated, Heckler v. Broz*, 461 U.S. 952 (1983),

*adhered to on remand, Broz v. Schweiker*, 711 F.2d 957 (11th Cir.), *modified in other respects*, 721 F.2d 1292 (11th Cir. 1983). The ALJ's decision that nonexertional impairments do not significantly limit basic work skills (that is, do not preclude a wide range work at a given exertional level) must be supported by substantial evidence in the record.

Dankert argues that the ALJ failed to "make a 'specific finding' as to whether [Dankert's] non-exertional limitations are severe enough to preclude a wide range of work." Doc. No. 14 at 8. However, the ALJ did make this finding, ultimately concluding that Dankert had the RFC to perform a "full range of sedentary work." R. 21. The ALJ specifically found that Dankert's mental condition resulted in only mild limitations in function. He concluded that Dankert's physical condition limited him, ultimately, to the full range of sedentary work, which would address the difficulty Dankert complained of in having to stand for long periods. While the ALJ could have made his findings regarding nonexertional impairments clearer, based on the ALJ's evaluation of Dankert's credibility, as discussed above, the decision is not one that leaves with Court with insufficient information to evaluate the decision. *Cf. Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the petitioner's] condition as a whole.'").

Because the ALJ applied the correct legal standards, and substantial evidence supports his conclusions, no basis exists to overturn the ALJ's decision.

## VI.    CONCLUSION.

For the reasons set forth herein, it is **ORDERED** that the decision of the

Commissioner is **AFFIRMED**.  The Clerk of Court is directed to issue a judgment

consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** this 13th day of February 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE